UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 05-13361 |
| | : | CHAPTER 13 |
| JOHN F.K. ARMSTRONG, DEBTOR | : | |
| | : | |
| JOHN F.K. ARMSTRONG, Movant | : | DOCUMENT NO. 48 |
| vs. | : | |
| LASALLE BANK NATIONAL | : | |
| ASSOCIATION, Respondent | : | |

APPEARANCES:

DANIELLE BOYLE-EBERSOLE, ESQ., KING OF PRUSSIA, PA, ATTORNEY FOR
        LASALLE BANK NATIONAL ASSOCIATION
JASON J. MAZZEI, ESQ., PITTSBURGH, PA, ATTORNEY FOR DEBTOR
RONDA J. WINNECOUR, ESQ., PITTSBURGH, PA, CHAPTER 13 TRUSTEE

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

October 8, 2008

OPINION

Factual Background

John F.K. Armstrong ("Debtor") filed a voluntary petition under Chapter 13 of the

Bankruptcy Code on September 29, 2005. The Petition was completed on October 1, 2005. In

Schedule A, Debtor schedules real property located at 3506 Walburn Road, Brockway,

Pennsylvania (the "Property") and lists a fair market value of $65,000 with a secured claim

against the Property in the amount of $53,962. On Schedule D, Debtor schedules Ocwen Federal

Bank FSB[1] ("Ocwen" or "LaSalle") as a secured creditor holding a mortgage against the

Property with a loan balance of $53,962 (the "Mortgage"). On October 24, 2005 Debtor filed a

proposed Chapter 13 Plan dated October 15, 2005 (the "Plan"). Debtor proposes a payment of

$637 per month for a Plan term of 36 months to the Chapter 13 Trustee. The Plan provides for a

---

[1] Ocwen Federal Bank FSB is the servicer for La Salle Bank National Association.

cure and reinstatement of the Ocwen Mortgage.  Ocwen is to receive its monthly payment of

$400 and prepetition arrears of $2400 will be cured over the term of the Plan.

Ocwen filed Proof of Claim No. 1 on October 6, 2005 (the "Proof of Claim").  Ocwen

asserts a total claim in the amount of $57,017.47 with arrearages of $3,141.11 included in the

total amount.  Attached to the Proof of Claim is a copy of the Mortgage, Adjustable Rate Rider

and an Adjustable Rate Note.  Ocwen attaches Exhibit A to its claim which indicates that the

post-petition payment amount is $404.60 and states that the payment amount is "[s]ubject to

change according to terms of your note and mortgage" and includes a "P&I Schedule" which

reflects that the monthly payment amount was $400.32 in April 2005 with an interest rate of

7.88% and for the months beginning in May 2005, the monthly payment increased to $404.60 at

an interest rate of 8.00%.

On December 7, 2005, LaSalle filed an objection to confirmation of the Debtor's Plan.

LaSalle objects to confirmation of the Plan as insufficiently funded to pay LaSalle's claim.

The first meeting of creditors was held on January 13, 2006 and the Plan was confirmed

by Order dated January 27, 2006.  The Order provides for an increased Plan payment of $717

and provides for LaSalle's claim to govern as to amount, classification and rate of interest.

The Debtor became delinquent in making Plan payments to the Chapter 13 Trustee.  The

Chapter 13 Trustee filed a Certificate of Default requesting dismissal of the case on October 24,

2007.  In response, on November 26, 2007, Debtor filed an Amended Chapter 13 Plan dated

November 21, 2007 (the "Amended Plan").  The Amended Plan was intended to cure Plan

arrears by increasing the monthly payment to $721 and extending the plan term to 46 months.

The Amended Plan provided for an increase in the payment to LaSalle to $404.60 "begin 9-05

per claim" and for payment of arrears in the amount of $3141.11 "through 8-05 per claim."

A hearing to consider confirmation of the Amended Plan was held on December 14, 2007

and the Amended Plan was confirmed by Order dated December 17, 2007.  The Order

confirming the Amended Plan provides at ¶ 3(c):

> Any creditor whose payment changes due to variable interest rates,
> change in escrow, or change in monthly payments, shall notify the
> Trustee, Debtor(s)' counsel and Debtor(s) at least twenty (20) days
> prior to the change taking effect.

The above language did not appear in the Order dated January 27, 2006 confirming the

original Plan.

Pursuant to General Order #2004-5, the Bankruptcy Court for the Western District of

Pennsylvania implemented revised Local Rules, Forms and Procedures effective July 1, 2004.

Chapter 13 Procedure #9, effective July 1, 2004 provides:

### Procedure #9 – Notice of Monthly Payment Changes

> All notices of post petition monthly payment changes must be
> served on the debtor, debtor's counsel and the Trustee.  This
> applies not only to the mortgage changes but to any monthly
> payment currently being paid by the Trustee.  The Trustee will not
> implement and the Court will not enforce a default order increasing
> the periodic plan payment without the affirmative consent of the
> Trustee.  Default orders shall set a 15 day deadline that requires the
> debtor to propose an amended plan containing the payment change
> or to certify that the existing plan payment is sufficient.

> The debtor's counsel (or debtor if pro se) will be responsible for
> proposing an amended plan including the increased monthly
> payment if the monthly payment change results in the under-
> funding of the plan.  In the event that the monthly payment change
> does not result in the under-funding of the plan, debtor's counsel
> (or debtor if pro se) must file a declaration that he has reviewed the
> existing plan, recomputed the plan payment, and finds that the
> existing payment is sufficient to fund the plan even with the new
> debt added.

A revision to Chapter 13 Procedure #9 was made effective October 17, 2005 to provide:

**PROCEDURE #9      NOTICE OF MONTHLY PAYMENT CHANGES**

All notices of postpetition monthly payment changes must be served on the debtor, debtor's counsel and the Trustee. This applies not only to the mortgage changes but to any monthly payment currently being paid by the Trustee. Service of such a notice shall not be construed as a violation of the automatic stay.

The proposed order accompanying any motion or pleading that requests an increase in a periodic payment shall set a 15-day deadline for filing an amended plan. The Trustee will not implement and the Court will not enforce any default order without the affirmative consent of the Trustee in writing.

The debtor's counsel (or debtor if pro se) will be responsible for proposing an amended plan including the increased monthly payment if the monthly payment change results in the under-funding of the plan.

Any amended plan containing the changed payment shall include the following statement: "The new postpetition monthly payment payable to _____ is _____ effective_____, per the escrow notice dated _____."

In the event that the monthly payment change does not result in the under-funding of the plan, debtor's counsel (or debtor if pro se) must file a declaration that he has reviewed the existing plan, recomputed the plan payment, and finds that the existing payment is sufficient to fund the plan even with the new debt added. The declaration filed to indicate that the plan remains adequately funded to pay the new postpetition monthly payment shall include the following statement: "The new postpetition monthly payment payable to _____ is $_____, effective _____, per the escrow notice dated _____."

When a Chapter 13 Plan is completed, the Trustee files an Order Approving Trustee's

Final Account and Administratively Closing Case.  The standard order provides in part:

(3)  Each and every creditor is bound by the provisions of the completed plan, whether or not the claim of such creditor is provided for by the Plan, and whether or not such creditor has objected to, has accepted or had rejected the plan.  All mortgage and other secured debts provided for by the Plan are hereby found to be cured of any and all monetary defaults as of the date of the Trustee's last distribution, and no additional interest, late fees or

penalties may be assessed for time periods or payments due prior
to that date.

On January 22, 2008, LaSalle filed a Notice of Post Petition Payment Change ("Notice"),

which provides for multiple payment changes over a period of years as follows:

> And now comes LaSalle Bank National Association, et al, c/o
> Ocwen, the secured creditor, and hereby gives notice to the
> Chapter 13 Trustee, the Debtor, and Debtor's Counsel, that the
> monthly post-petition mortgage payment amount has changed.
> Effective with the bankruptcy filing, the post-petition monthly
> mortgage payment was $404.60 per month; effective December 15,
> 2005 the post-petition monthly mortgage payment was $436.84 per
> month; effective June 15, 2006, the post-petition monthly
> mortgage payment was $469.74 per month; effective December 15,
> 2006, the post-petition monthly mortgage payment was $479.41
> per month, and effective June 15, 2007, the post-petition monthly
> mortgage payment remained $479.41 per month.

LaSalle served the Notice on the Debtor, Debtor's counsel and the Chapter 13 Trustee.

Presently before the Court is the Debtor's Objection to the Notice as being late filed and

untimely and LaSalle's response thereto.  Debtor seeks an Order which strikes the Notice as

untimely and a finding that LaSalle is limited to the monthly payment of $404.60 as provided for

in the Amended Plan.

LaSalle responds that it complied with the December 17, 2007 Order:

> as on January 22, 2008, it filed a Notice of Post Petition Payment
> Change with the Court.  Since an Order requiring such notice was
> not effective until December, 2007, Movant cannot be forced to
> some how retroactively comply for the payment changes which
> were effective from 2005 – 2007, prior to such Order and
> consistent with Debtor's ARM loan.

LaSalle further states that it has "continually and timely given Debtor notice of his

Adjustable Rate Mortgage changes in writing."

A hearing was held on March 14, 2008 and the matter was taken under advisement.  We

find that this matter is ripe for decision.

<u>Discussion</u>

Many, if not most, Chapter 13 cases are filed by homeowners who are delinquent on their mortgage payments and are facing foreclosure.  The purpose of the bankruptcy filing is to save the family home by continuing to make regular monthly mortgage payments required by the contract and curing all prepetition arrears over the term of a Chapter 13 plan.  Successful completion of a Chapter 13 plan results in a cure of all mortgage delinquencies and reinstatement of the residential mortgage.

To assure that debtors cure prepetition delinquencies and also maintain current monthly payments, this district requires that all payments to the mortgage lender be paid through the Chapter 13 Trustee.

Unnoticed post-petition charges or changes in interest rates which result in an increased monthly payment amount "can derail a debtor's Chapter 13 plan and keep a successful debtor from achieving the ultimate goal – a fresh start." <u>In re Payne</u>, 387 B.R. 614, 631 (Bankr. D. Kan. 2008).  "Debtors must be advised when post-petition charges are being assessed against their account so they can fulfill their expectation of addressing their debt in bankruptcy and emerge with their secured debt current."  <u>Id</u>.  Similarly, Debtors must be advised of changes in payment amount due to interest rate adjustments.

> The Court and the Chapter 13 Trustee are charged with fully administering a case through completion.  Administering a successful Chapter 13 plan requires full disclosure from all participants and requires that plan confirmation is not thwarted by mortgagees who assess unnoticed increases in the borrower's debt believing they can collect from their collateral upon completion of an otherwise successful Chapter 13 plan.
>
> Further, post-petition fees and charges and post-petition defaults may be cured and paid under a modified plan.  The right to modify a plan post-confirmation and the ability to address post-confirmation debt service increases is lost if lenders are allowed to keep debtors in the dark as to their true post-petition debt

6

> obligations.  Without knowledge of escalating post-confirmation
> charges, debtors cannot protect their right to a fresh start after
> otherwise successfully emerging from Chapter 13.

In re Payne, 387 B.R. at 631-32 (footnote omitted).

The Court has taken multiple measures to assure that debtors who fulfill the requirements and complete a Chapter 13 Plan receive the relief sought and wind up with a mortgage that is cured of deficiencies, current and reinstated in accordance with its original terms.

We require that all payments be made through the Chapter 13 Trustee for both the arrearages and the current monthly payments.

Additionally, Chapter 13 Procedure #9 ("Procedure #9") provides that the debtors, their attorney and the Trustee are made aware of any payment changes so that debtors may amend their plan to account for such changes.  Notice to only a debtor is insufficient.  Debtors often fail to recognize the importance and effect of such notices.  This District requires notice to counsel and to the Trustee so that they can implement the process of reviewing the situation and taking appropriate action such as the filing of an Amended Plan, if necessary.  The procedure is designed to make sure that there are no surprises after completion of a plan regarding the balance due on a debtor's residential mortgage.

Compliance with these procedures and the terms of a Chapter 13 Plan enables the Court to issue its standard order at the conclusion of a Chapter 13 case, which states that "[a]ll mortgage . . . debts provided for by the Plan are hereby found to be cured of any and all monetary defaults as of the date of the Trustee's last distribution . . .."

> [A]ll bankruptcy courts have the authority to enact local rules
> governing practice and procedure and to issue orders necessary to
> carry out the provisions of the Bankruptcy Code.  See Fed. R.
> Bankr. P. 9029; 11 U.S.C. § 105.  CFCU claims that the
> Administrative Order, as a standing order, has not been properly

enacted as a local rule, and therefore, cannot have force to regulate general bankruptcy practices.  Appellant's Brief (Dkt. No. 4) at 9.  CFCU also argues that the issuance of standing orders generally, instead of the adoption of a new or amended local rule is strongly disapproved. *Id.* (citing *In re Dorner*, 343 F.3d 910 (7th Cir. 2003); *Ford Motor Credit Co. v. Randall Johnson (In re Standing Order)*, 272 B.R. 917 (Bankr. W.D. La. 2001)).

Yet, under Federal Rule of Bankruptcy 9029(b) ("Rule 9029(b)"), a judge is permitted "to regulate practice in any manner consistent with federal law, the Federal Rules of Bankruptcy Procedure, the Official Forms and local rules promulgated pursuant to Rule 9029(a)(1)."  Fed. R. Bankr. P. 9029(b).  This rule was promulgated in order to give courts flexibility to regulate bankruptcy practice and fill in gaps when there is no controlling law.  *In re Binion*, No. 05-69633, 2006 Bankr. LEXIS 2372, at *12 (Bankr. N.D. Ohio Sept. 15, 2006) (citing Fed. R. Bankr. P. 9029 Advisory Committee's Note (1995)).  The Advisory Committee's Note states that Rule 9029(b) recognizes and continues to authorize the courts' use of internal operating procedures, standing orders, and other internal directives to regulate bankruptcy practice.  *See id.*  Accordingly, pursuant to Rule 9029(b), the Bankruptcy Court may issue standing orders regulating practice without promulgating a separate local rule through the notice and comment procedure outlined in Federal Rule of Bankruptcy Procedure 9029(a) and Federal Rule of Civil Procedure 83.

In re Jones, Civ. Action No. 6:07-CV-0027, 2007 WL 2609790, (N.D. NY, September 4, 2007).

Procedure #9 does not affect a mortgagee's rights in violation of the anti-modification provisions of 11 U.S.C. § 1322(b)(2), but merely establishes a mechanism for enforcement of those rights while enabling debtors to achieve their Chapter 13 goals.  See In re Wilson, 321 B.R. 222 (Bankr. N.D. Ill. 2005); In re Watson, 384 B.R. 697 (Bankr. D. Del. 2008).

From the perspective of mortgagors in a Chapter 13 case, these procedures are designed to prevent a potentially dangerous pitfall where after making years of payments into a Chapter 13 Plan, borrowers exit bankruptcy with their discharge safely in hand, only to be immediately faced with a foreclosure action.  See In re Johnson, 384 B.R. 763, 772 F.N.4 (Bankr. E.D. MI

2008) <u>citing</u> John Rao, <u>Fresh Look at Curing Mortgage Defaults in Chapter 13</u>, 27 Am. Bankr.

Inst. J. 14, 62 (Feb. 2008).

Procedure #9 is a valid procedure implemented to regulate bankruptcy practice in this

District.  LaSalle failed to comply with Chapter 13 Procedure #9 which has been in effect since

July 1, 2004.  Earlier notifications were apparently given to the Debtors, but not to the Trustee

nor to Debtor's counsel, as required by Chapter 13 Procedure #9.

LaSalle also did not object to Confirmation of the Debtor's Amended Chapter 13 Plan

which provided for a regular monthly mortgage payment to LaSalle in the amount of $404.60.

According to the late Notice filed by LaSalle, it was due a payment of $479.41 per month at the

time that the Amended Plan was confirmed.

It was not until over a month after the Confirmation of the Amended Plan that LaSalle

filed its Notice asserting several payment increases over a period of years.  LaSalle asserts that it

complied with the December 17, 2007 Order and cannot be forced to comply prior to that date.

LaSalle ignores Chapter 13 Procedure #9 which has been in effect since 2004.

As stated by the Trustee's attorney, allowance of retroactive notices would create "chaos"

in the Chapter 13 system.  Further, the fundamental purpose of Chapter 13, which is to enable a

debtor to cure and reinstate a residential mortgage, would be impaired.  It is inappropriate to

allow a lien creditor to claim an interest payment increase retroactively.

Where a mortgage lender fails to comply with notice requirements under federal and state

law, the consequence is a waiver of its rights associated with that failure.  <u>In re Dominique</u>,

368 B.R. 913 (Bankr. S.D. FL. 2007); <u>Chase Manhattan Mortgage Corp. v. Padgett</u>,

268 B.R. 309 (S.D. FL 2001).

The additional interest claimed prior to the Notice thereof will not be allowed.  Interest at

the increased rate will be allowable commencing 20 days after the filing of the Notice.

An appropriate Order will be entered.


/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE                             :    BANKRUPTCY NO. 05-13361
                                 :    CHAPTER 13
JOHN F.K. ARMSTRONG, DEBTOR   :
                                 :
    JOHN F.K. ARMSTRONG, Movant  :    DOCUMENT NO. 48
                 vs.                 :
    LASALLE BANK NATIONAL       :
    ASSOCIATION, Respondent      :

**<u>ORDER</u>**

This 8th day of October, 2008, in accordance with the accompanying Opinion, it shall be, and hereby is ORDERED as follows:

1.      The payment amount due on the Debtor's obligation to LaSalle Bank, National Association, c/o Ocwen on the mortgage secured by Debtor's residence from the date of the Bankruptcy filing, September 29, 2005 through February 12, 2008, twenty days after LaSalle filed its Notice of Post-Petition Payment Change, is $404.60 per month.

2.      LaSalle Bank National Association, c/o Ocwen is prohibited from collecting or assessing any increased interest charges or other payment amount increases for the periods prior to February 11, 2008 (20 days after it filed and served notice) against the Debtor.

3.      LaSalle Bank, National Association, c/o Ocwen shall notify the Debtor, Debtor's attorney, the Trustee and file with the Court a statement of payment changes for December 15, 2007 and June 15, 2008.  If the payment amounts have decreased, Debtor is entitled to calculate payments at the reduced amounts.

4.      LaSalle Bank, National Association, c/o Ocwen shall timely file all future Notices of Post-Petition Payment Change.

5.      Debtor and/or Debtor's Counsel shall file an Amended Chapter 13 Plan or file a Declaration that the existing Chapter 13 Plan is sufficient to fund the Plan with the new debt added and serve said Amended Plan or Declaration on all parties within fifteen (15) days of the date of this Order.

6.      Upon successful completion of the bankruptcy case and upon receipt of discharge, LaSalle Bank, National Association c/o Ocwen shall treat the Mortgage as fully current and reinstated.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge